Edward J. PALIVODA and Genevieve K.
Palivoda, his wife, Plaintiffs,

v.

Russell L. BRUETTE and Audrienne Bru-
ette, his wife, Defendants and
Third-Party Plaintiffs,

v.

Marvin S. SMITH, Third-Party Defendant.

Superior Court of Delaware.
New Castle.

Jan. 20, 1969.

David A. Eastburn, Edmund J. Bodziak, Wilmington, for Palivoda.

Robert V. Huber, Wilmington, for Bruette.

Rodman Ward, Jr., Prickett, Ward, Burt & Sanders, Wilmington, for Smith.

OPINION

O'HORA, Judge.

Plaintiffs seek compensatory and punitive damages from defendants Bruette for an alleged encroachment by the Bruettes on the plaintiffs' property.

The plaintiffs and the Bruettes own adjoining land fronting on Kirkwood Highway in New Castle County, Delaware. The Bruettes own and operate a paint store located on their property. In 1964 the Bruettes, with a view to expanding and

enlarging their store, employed Marvin S. Smith ("Smith") to make a survey of their property. Smith, a local civil engineer and surveyor of considerable experience, has been joined as a third party defendant and here moves for summary judgment.

Three employees of Smith made the survey of the Bruette property using "PK nails"[1] located at various street intersections, including the intersection of Marion and Clifton Avenues, which adjoin the parties' properties. Stakes were later placed by Smith's crew marking the boundaries of the Bruette property. The new Bruette building, with its Westerly wall located against the boundary indicated by the stakes, was completed in 1965.

In the summer of 1966 the plaintiffs, before having a concrete driveway laid, had their own property surveyed for the first time. This work was done by Van Demark & Lynch ("VD & L"), a local surveying firm of considerable repute. The VD & L survey, which made use of stone monuments buried in the ground as opposed to PK nails as the original points of reference, supported a suspicion of plaintiffs that the Bruette building encroached by approximately four inches.

During the same summer another survey was done by the Smith firm to show the position of the Bruettes' new building. This survey revealed an encroachment of approximately five-eighths of an inch on the rear Westerly corner of the building.

Smith subsequently learned of the VD & L survey and decided to make a personal survey of the property himself. As the original points of reference for his survey, Smith used the monuments which the VD & L crew had used as opposed to the PK nails which his own crew had used. On the basis of this survey Smith concluded that the VD & L survey was correct. By letters on June 21, 1967, he communicated his findings to Mr. Bruette and to the Bruettes' attorney. He attributed what he then considered to have been his crew's error to the slightly different locations of the PK nail and monument at the intersection of Marion and Clifton Avenues.

In February, 1968, after checking through records of other work he had done in the area, Smith determined that his crew's survey had in fact been correct. He concluded that the Marion-Clifton Avenues monument may have been dislodged during repaving several years earlier and that the PK nails were thus a more reliable source of reference in this particular area.

Thus, in the final analysis, the surveys which VD & L and Smith both claim to be accurate are different—the former shows an encroachment of approximately four inches whereas the latter shows only a partial five-eighths of an inch encroachment.

The Bruettes contend that the survey made by Smith himself, which coincides with the VD & L survey, is the correct one and shows that any encroachment is the direct result of Smith's negligence in surveying the Bruette property.

Smith contends that he acted throughout in accordance with the standard of care required of a professional civil engineer. The record in his view fails to reveal any negligence. In support of this position he points out that 1) no other engineer has suggested that he was negligent, 2) the only "expert" affidavit in the record indicates that he was not negligent, and 3) the letters written by him to Bruette and his counsel are not admissions of negligence. Smith thus urges that any acts of negligence by him are refuted by the record and that Rule 56(E) precludes the Bruettes from relying further on the pleadings and requires them to come forward with expert testimony to support their contentions, if summary judgment in his favor is to be denied.

The Bruettes oppose the motion on the sole ground that a material issue of fact

---

1. A PK nail is a large very hard nail which is regularly used by surveyors in fixing points of reference in paving materials.

exists as to which of Smith's inconsistent findings is to be believed. They argue that the jury can readily evaluate the reasons why Smith twice changed his mind without the aid of any expert testimony.

Two basic considerations are essential to a determination of the merits of Smith's motion. First, the record must be read in the light most favorable to the opponent's cause. Second, issues of negligence are not ordinarily susceptible of summary adjudication. When the movant, however, clearly establishes that there is no genuine issue of material fact, such judgment may be appropriate. Lightburn v. Delaware Power & Light Company, 53 Del. 186, 167 A.2d 64 (Super.Ct.1960); 6 Moore, Federal Practice, ¶56.17[42] (2d Ed.1953).

Superior Court Civil Rule 56(e), Del. C.Ann. provides in pertinent part as follows:

> " * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Pursuant to this Rule, therefore, when a motion for summary judgment has been filed and supported by sworn testimony, the opponent can no longer rest solely on the allegations contained in his pleadings. He must at this point come forth with evidence which indicates the existence of a material fact. 6 Moore, supra, ¶56.22[2]; Frank C. Sparks Co. v. Huber Baking Co., 48 Del. 9, 96 A.2d 456 (1953).

Smith's motion is supported by the affidavit of Frank T. Lynch, President of VD & L. Mr. Lynch's affidavit, and his subsequent deposition, clearly refute any negligence on Smith's part. The Bruettes were thus required to produce some evidence indicating that in fact the Smith survey was incorrect and the result of negligence on Smith's part. They have failed to sustain their burden. The subsequent evidence introduced by them merely demonstrates what has already been conceded— 1) the PK nail and monument surveys made by Smith differ, 2) Smith initially felt the PK nail survey was incorrect. None of the original or additional evidence, including the letters of June 21, 1967, indicates that any error in making either type of survey was caused by a failure of Smith and/or his agents to "exercise that degree of care which a surveyor or civil engineer of ordinary skill and prudence would exercise under similar circumstances". 50 Am.Jur., Surveyors and Civil Engineers, § 3.

The Bruettes, as mentioned earlier, contend that summary judgment is not available to Smith since a genuine issue of material fact exists regarding which of Smith's conclusions is to be accepted. The logic or merit of this argument appears tenuous. The Bruettes are apparently trying to place themselves under the general rule set forth in Moore, supra, ¶56.17[42] which requires that summary judgment be denied where there is a real issue of credibility. The Bruettes' reliance on this general rule seems misplaced. Even if a jury were allowed to consider the issue and then found the PK survey to be the less accurate of the two types made, no finding that any error was the result of negligence on the part of Smith could be sustained by this record.

The Bruettes, having failed to indicate the existence of a genuine issue of material fact, no discussion of the type of proof which would be required at trial to prove negligence is necessary.

For the reasons stated, the Court concludes that the motion for summary judgment, on behalf of the third party defendant, should be granted.

It is so ordered.