**Martin A. SCHAGRIN, Administrator of the Estate of Terry Johnson, Plaintiff,**

v.

**WILMINGTON MEDICAL CENTER, INC., a corporation of the State of Delaware, Defendant.**

Superior Court of Delaware, New Castle.

March 8, 1973.

**62**

Morton Richard Kimmel, Wilmington, for plaintiff.

Rodney M. Layton, Jane R. Roth, Richards, Layton & Finger, Wilmington, for defendant.

OPINION

O'HARA, Judge.

On July 1, 1969, Terry Johnson, a nine year old child, fell on a sidewalk while playing with other children. She received a two and one-half inch cut on her left leg just below the knee from a broken soda bottle. Her sister, Shirley Johnson, immediately took her the the Emergency Room of the Delaware Division, of the Wilmington Medical Center. At the Emergency Room she was treated by the physician in charge who cleaned the wound and closed it with stitches. She was instructed by the physician to see her family doctor within five days.

However, on Sunday, July 6, 1969, the child returned to the same Emergency Room complaining of continuing pain. She was treated by the physician in charge, a different one than the one who had treated her on the first occasion, who noted a tremendous swelling in the knee area and removed an Ace bandage from

her leg which had been applied by the first physician. The second physician noted an early infection, directed that the leg be elevated and removed two stitches to permit drainage. He further instructed the child and her mother to soak the cut with warm Dial soap solution every one-half hour. He further stressed that she should return the next morning to the Surgery Clinic.

On July 7, 1969, when the child returned to the Surgery Clinic, she was admitted to the hospital. Thereafter cultures were taken of the wound and other tests administered and, in time, antibiotics given. However, the infection was not controlled and on July 12, 1969, Terry Johnson died.

This is an action by the Administrator of the Estate of the deceased child, against the defendant, operator of the hospital involved, in which damages are sought pursuant to 10 Del.C. § 3704(a), (b). The posture of the case at present is that defendant has moved for summary judgment on the basis that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law.

Defendant's contentions may be summarized as follows:

1. The defendant, the record discloses, entered into an agreement with a partnership known as Doctors For Emergency Services ("DFES") to provide the professional services of medical doctors for the operation of emergency facilities which included the hospital known as Delaware Division. The two doctors who treated the deceased child on July 1, 1969 and July 6, 1969, were duly authorized physicians employed by DFES pursuant to the agreement between DFES and defendant. As a consequence the negligence, if any, of these physicians cannot be attributed to the defendant inasmuch as the services rendered were performed by an independent contractor, neither the agent nor servant of defendant.

2. Plaintiff alleges that the defendant was negligent not only in the Emergency Room but also in the treatment administered to the deceased child after her admission to the hospital. Defendant, based upon an affidavit of a competent medical doctor filed in the record, has presented, in the record, evidence that the treatment administered to the deceased child was the accepted treatment for the condition involved. Plaintiff, on the other hand, has produced no medical support for its contentions relative to treatment other than quotations from a text, Cantor, Traumatic Medicine and Surgery for the Attorney, cited by plaintiff in his brief and argument but not otherwise a part of the record in this case. Summary judgment should be granted to defendant because there is nothing in the record to support the contentions, the medical publications referred to in argument not being admissible as evidence at trial, and Rule 56(e), Del.C.Ann., requires plaintiff to produce a more formal opposition in order for the action to survive.

Summary judgment is granted only if the undisputed facts indicate that the moving party is entitled to a judgment as a matter of law. In testing this principle against the record in a given case, the Court must accept the facts stated in a light most favorable to the non-moving party. Hazewski v. Jackson, 266 A.2d 885 (Del.Super.1970). Any reasonable hypotheses by which the opposing party might recover is a sufficient basis for denial of such judgment. So also must such judgment be denied if there is a material fact in dispute, or a dispute as to the inferences which might be drawn therefrom. Vanaman v. Milford Memorial Hospital, Inc., 272 A.2d 718 (Del.Supr.1970); McGahey v. Swinehart, 267 A.2d 469 (Del.Super.1970).

The generally accepted principle of law is that the employer of an independent contractor is not liable for the torts of such contractor or his servants, even though the employer be a hospital and the independent contractor be a physician

or surgeon guilty of negligence or malpractice in connection with medical services rendered by the physician in the hospital. 69 A.L.R.2d 315. However, a number of exceptions have been noted to such general principle of law. It has been determined, for example, that when one has undertaken to do a certain thing or to do it in a particular manner, he cannot, by employing an independent contractor, avoid liability for injury resulting from a nonperformance of duties assumed by the independent contractor under his agreement. Giusti v. C. H. Weston Co., 165 Or. 525, 108 P.2d 1010 (1941) (Negligence on the part of a hospital association engaged in providing medical services to members of a football team pursuant to an agreement with a high school).

■ It should be noted initially that a private hospital, such as the one here involved, is under no legal obligation to the public to staff and maintain an emergency treatment facility for the public. Wilmington General Hospital v. Manlove, 4 Storey 15, 174 A.2d 135 (Del.Supr.1961). Once having established an emergency room, however, the issue remains whether or not services performed therein are performed by agents or servants of the hospital or whether they are performed by independent contractors. In Vanaman v. Milford Memorial Hospital, Inc., supra, the Delaware Supreme Court, in a somewhat different medical setting, nevertheless, held that the question of agency was a crucial question to be determined after considering such factors as the degree of control exercised by the hospital, the manner in which the doctor is paid, the reliance of the injured party, if any, upon the hospital, as distinguished from the particular physician involved, etc.

Of significance here is the comment of the Court in Bing v. Thunig, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3 (overruling a long-held New York and Massachusetts acceptance that the responsibility of the hospital extended only to the selection of the

physician with reasonable care), wherein it was stated:

"The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes, as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of 'hospital facilities' expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility."

While the New York Court was undoubtedly speaking directly of a situation involving medical personnel who were clearly employees of the hospital, nevertheless, the rationale of the Court would apply equally to independent contractors performing medical services ordinarily performed by the hospital. This is particularly pertinent in situations where there has been a holding-out or a representation that medical treatment is to be performed or administered in the hospital by medical personnel employed therein.

■ All things considered it cannot now be said that there is, on the record as presently constituted, no disputes as to facts surrounding the defendant's relationship to the operation of the Emergency Room and the doctors working therein, and the representation of the defendant to the public that the Emergency Room is a part of the hospital facilities. These matters which are in controversy have not been explored at all in depth. They cannot be resolved at this juncture of the proceedings. Without a resolution of such facts as background

no ruling of law can be made with respect to defendant's avoidance of liability via the independent contractor route.

This conclusion is reached even though the Court's attention has been called to Magee v. Wilmington Medical Center, Inc., No. 866 Civil Action 1970, an unreported opinion of Honorable George R. Wright, of this Court. Superficially the *Magee* decision would appear to be determinative of the issue in this case, Judge Wright having concluded that the Emergency Room treating physician was not the agent of the defendant-hospital. However, the *Magee* decision is unpersuasive in this instance as there is a paucity of facts or circumstances set forth and upon which the opinion is based, and from which the conclusion might properly be applied to the instant case. The decision reached herein is not intended to be interpreted as overruling the *Magee* holding. The basis of the *Magee* decision is simply not set forth fully enough to be relied upon as the controlling authority on the issues raised here.

The defendant's second contention, that the record is void of any medically accepted and admissible evidence to support plaintiff's contentions must now be met. In Delaware medical publications or texts have not heretofore been admissible as evidence at a malpractice trial, except as a basis for cross-examination of witnesses. Barks v. Herzberg, 206 A.2d 507 (Del. Supr.1965). The plaintiff argues that this is not the issue here, a pretrial stage, and, therefore, the admissibility of this material at trial is presently irrelevant. Superficially, this argument seems persuasive until an examination in depth is made of the provisions of this Court's Rule 56. This Rule, which is designed to apply to summary judgment proceedings, is quite specific with respect to the factual setting here presented. Rule 56(e), relating to the filing of affidavits, has been made use of by defendant in this case through the filing of an affidavit of a qualified physician, who very particularly describes the condition of the deceased child as indicated in the record. He further describes the course of treatment which was followed and the accepted and proper course of treatment in such instances. Finally, he states his opinion that the .entire record supports the defendant's position that the child's death can be attributed to causes other than negligence on defendant's part. Furthermore, this affiant is established as a licensed physician in the area, specializing in internal medicine, the field having direct bearing upon the deceased child's condition prior to death.

There are two provisions with respect to Rule 56(e) which at this stage must be considered. The first part is that the Rule provides that such an affidavit as defendant's may be opposed by "depositions, answers to interrogatories, or affidavits". The plaintiff has used none of these enumerated methods to oppose defendant's affidavit. The crucial part of the Rule thereafter follows and reads:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

A fair reading of this entire Rule requires that plaintiff, in the current standing of the case before the Court, must present affirmative opposition through depositions, answers to interrogatories or affidavits to the facts and conclusions set forth in defendant's affidavit referred to, or suffer the consequences of having summary judgment entered on behalf of defendant. However, in the interest of justice, some further opportunity should be given to plaintiff to meet the requirements of Rule 56(e) before the sanction of summary judgment is applied. It would seem, for example, that counsel has been more

concerned with meeting the other problems raised in connection with this motion, and which have been dealt with herein, and might well have overlooked the probable consequence of the application of Rule 56(e). Furthermore, plaintiff has referred to a text which would seem to meet defendant's position head-on. This would indicate that plaintiff should be able to present this response, in some acceptable form, given time, so as to properly raise an issue of fact for trial. In any event, the Court proposes to permit plaintiff some further time to make this effort. For this reason the motion for summary judgment will not be granted as to this issue at this time. Instead plaintiff is granted a period of thirty days, from the date of this opinion, wherein the record may be supplemented to meet the Rule 56(e) requirements. If the record has not been supplemented by that time, the Court will entertain a renewal of defendant's motion for summary judgment.

For the reasons herein set forth, the Court concludes that defendant's motion for summary judgment must be denied at this time.

It is so ordered.