375 S.E.2d 798

**Rose Ann WELLS and Fred Wells, her husband,**

v.

**Chris C. TENNANT and Carolyn F. Orr**

v.

**Marshall S. HOOD and Betty J. Hood, his wife, and Kenneth P. Riley and Norman J. Kronjaeger, d.b.a. K & R Engineering Company.**

**No. 18128.**

Supreme Court of Appeals of West Virginia.

Dec. 9, 1988.

---

Robert M. Amos, Fairmont, for Wells.

Jeff Harris, Morgantown, for Tennant & Orr.

John C. Higinbotham Fairmont, for Hood.

Frank C. Mascara, Fairmont, for Riley & Kronjaeger.

## PER CURIAM:

This is an appeal by Carolyn F. Orr from an order entered by the Circuit Court of Marion County in a boundary-line dispute. The court reformed a deed establishing the disputed boundary line and dismissed the appellant's third-party complaint against the prior owners of her property and against a surveyor of the property. The appellant had claimed that the prior owners were obligated to her under a covenant of general warranty and that the surveyor had negligently surveyed the line in dispute. On appeal the appellant contends that the court erred in reforming the deed and that the court's dismissal of her third-party complaint was, in effect, a summary judgment, and that at the time of granting the dismissal there were questions of material fact in the case and that consequently the dismissal, in the nature of a summary judgment, was improper. After reviewing the record, this Court agrees and reverses the decision of the Circuit Court of Marion County.

This action originated as a dispute over the location of a boundary line between the front and the rear portions of Lot 6, Block 10, Bellview Heights Subdivision of the City of Fairmont, West Virginia. All of Lot 6, Block 10 of the Bellview Heights Subdivision had at one time been owned jointly by the mother and aunt of Marshall Hood, one of the appellees in the present proceeding. The mother and aunt, to separate their affairs, had voluntarily partitioned the lot on the basis of a plat prepared by K & R Engineering Company. As a result of the partition, Marshall Hood's mother received the rear portion of Lot 6, Block 10 and the aunt received the front portion of the lot.

It appears that K & R Engineering Company did not lay the boundary line out in the manner in which Marshall Hood's mother and aunt had intended it to run and that as a consequence a garage, which was supposed to be on the aunt's lot after partition, was actually on Marshall Hood's mother's lot.

Marshall Hood, in the course of time, acquired the rear portion of Lot 6, Block 10 which had previously belonged to his mother. Rose Ann Wells, the aunt, and Fred Wells, her husband, owned the front portion. Later, by deed dated October 19, 1984, Marshall Hood and his wife, Betty J. Hood, conveyed the rear portion of the property to the appellant, Carolyn F. Orr. The deed contained general warranty language stating that:

> The said grantors hereby covenant to and with the said grantee that they have good right and title to said property here-

by conveyed and will warrant the same generally.

Prior to the delivery of the deed from Marshall S. Hood to Carolyn F. Orr, Chris C. Tennant, Carolyn Orr's stepfather, who was acting in Carolyn Orr's behalf in the purchase transaction, discovered that certain defective utility lines serving the house located on the front portion of the lot ran through the basement of the property which was about to be purchased. He also discovered that the boundary line between the front and rear portions of Lot 6 appeared to run through a garage which served the house located on front portion of Lot 6.

After the rear portion of Lot 6 had been transferred to Carolyn F. Orr, a dispute arose with the owners of the front portion, Rose Ann Wells and Fred Wells, over the garage and over the utility lines. In the course of that dispute, the appellant, Chris C. Tennant, acting in behalf of his stepdaughter, cut the water and gas lines to the Wells' house. Rose Ann Wells and Fred Wells then instituted the present action against Chris C. Tennant and Carolyn F. Orr. They prayed for monetary damages for the cutting of their utility lines, and they alleged that because of a surveying error they had not received an appropriate boundary line in their portion of Lot 6. In addition to damages, they prayed for reformation of the partition deed so that they would have the line which they claimed and title to a 7' × 12' section of the rear portion of the lot.

Carolyn F. Orr and her stepfather, Chris C. Tennant, filed an answer and a counterclaim to the Wells' complaint, and they also filed a third-party complaint against Ms. Orr's grantors, Marshall S. Hood and Betty J. Hood, his wife, and against Kenneth P. Riley and Norman J. Kronjaeger, d.b.a. K & R Engineering Company. In the third-party complaint they sought indemnification from the Hoods for breach of the Hoods' general warranty. They also indicated that K & R Engineering Company had been grossly negligent in surveying and preparing the plat for the partition of Lot 6 and that such negligence had proximately resulted in the Wells' garage encroaching seven feet onto Carolyn F. Orr's property.

After extensive preliminary proceedings in the case the circuit court, on October 22, 1987, after reviewing motions and memoranda of the parties, ordered that the deeds involved in the case be reformed so as to deprive the appellant of a portion of her property. The court also ordered that the third-party complaint be dismissed.

In the present proceeding the parties recognize, and our law supports the conclusion, that the trial court's action in ruling in the case and in dismissing the appellant's third-party complaint was tantamount to the court's granting summary judgment. See Rule 12(b) of the West Virginia Rules of Civil Procedure. In connection with this, however, the appellant also argues that the court's granting of summary judgment was improper since there were questions of material fact in the case and the court's action effectively precluded them from introducing evidence on those questions.

■ The fundamental rule relating to summary judgment in this State provides that:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

Initially, in the present proceeding the appellant claims that the trial court erred in ordering the deed to be reformed because of mistake since a court cannot properly order reformation where the rights of an innocent purchaser for value have intervened. She argues that the evidence suggests that she was a bona fide purchaser for value and that the trial court erred in precluding her from introducing evidence on the point.

■ The appellant is correct in asserting that in West Virginia reformation may not

be granted if a bona fide purchaser for value has purchased property subject to reformation. As stated in syllabus point 1 of *Stickley v. Thorn,* 87 W.Va. 673, 106 S.E. 240 (1921):

> Equity will not reform and correct a deed on account of mistake unless it is shown by clear, convincing and unequivocal evidence that the mistake was mutual; but if the rights of an innocent bona fide purchaser for value have intervened, the reformation and correction will not be made.

It is, however, rather generally recognized that a person cannot become a bona fide purchaser for a parcel of real estate unless he received the conveyance and paid the price for the land before he received notice of any equities relating to the real estate. *Briscoe v. Ashby,* 65 Va. 454, 24 Grat. 454 (1874). *See Heck v. Morgan,* 88 W.Va. 102, 106 S.E. 413 (1921); *Webb v. Bailey,* 41 W.Va. 463, 23 S.E. 644 (1895). It is also stated in syllabus point 3 of *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.,* 63 W.Va. 685, 60 S.E. 890 (1908), that

> That which fairly puts a party on inquiry is regarded as sufficient notice, if the means of knowledge are at hand; and a purchaser, having sufficient knowledge to put him on inquiry, or being informed of circumstances which ought to lead to such inquiry, is deemed to be sufficiently notified to deprive him of the character of an innocent purchaser.

*See Gullett v. Burton,* 176 W.Va. 447, 345 S.E.2d 323 (1986); *Bailey v. Banther,* 173 W.Va. 220, 314 S.E.2d 176 (1984).

In his deposition in this case, Chris C. Tennant, the appellant's agent, testified that he did not realize that there was any problem with the location of the boundary line to the property which he proposed to buy on behalf of his stepdaughter until some three months after he entered into a real estate contract. At that point he learned that the boundary line possibly ran through a garage on the property, but in his deposition he indicated that he did not feel that that was a substantial problem because he was going to tear the garage down anyway.

■ In this Court's view the fact that Mr. Tennant realized that the boundary line involved in this case possibly ran through a garage on the property was sufficient to put him and the appellant fairly on notice that there was some problem with the location of the boundary line. By his own admission, he learned of the possible problem before the transaction was closed and before he had paid the full purchase price for the property. Under the circumstances, the appellant could not have been an innocent party under the rule set forth in syllabus point 3 of *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.,* *supra.* For this reason, this Court believes that the appellant's assertion relating to the court's granting reformation is without merit.

The appellant next claims that the court's order dismissing the third-party complaint was in effect a grant of summary judgment and that it was improper in that there were genuine issues of material fact to be tried upon the third-party complaint.

In the third-party complaint, the appellant alleged that her immediate grantors, Marshall S. Hood and Betty J. Hood, had breached their covenant of general warranty. On this point the trial court ruled that:

> The defects complained of—consisting of the partial encroachment of a garage and the presence of water and gas lines (located in the basement of Lot 6B but servicing Lot 6A)—are in encumbrances and are not covered by a general warranty deed.

■ In *Cain v. Fisher,* 57 W.Va. 492, 50 S.E. 752 (1905), this Court explained that the mere existence of an encumbrance against a parcel of real estate does not constitute a breach of a covenant of warranty. The Court went on to state, however, that:

> That a covenant of warranty is not strictly a covenant against encumbrances is true, but an incumbrance may, and often does, work a breach of a covenant of warranty by resulting in a loss of title

and eviction of the grantee. No right of action accrues under a covenant of warranty by reason of the fact that there is an incumbrance upon the property, but when that incumbrance results in a sale of the property, taking away the title of the grantee, a right of action does accrue on the covenant of warranty.

*Cain v. Fisher,* 57 W.Va. at 494, 50 S.E. at 753. In syllabus point 4 the Court summarized the rule as follows:

> Though a covenant of warranty is not a covenant against incumbrances, an incumbrance which eventuates in an eviction of the covenantee works a breach of such covenant.

■ In the case presently under consideration, the existence of the Wells' claim to the portion of the parcel of property in dispute did not, in and of itself, constitute a breach of the Hoods' warranty to the appellant. However, it is rather clear that the existence of that claim ultimately resulted in the reformation of the deed and a detraction from the amount of property which the appellant ultimately received and owned.

Although the general rule is that a covenant of general warranty of title is not broken until there is an ouster or eviction of the vendee from the property, this Court has recognized that equivalent disturbance by paramount title could bring about such a breach of the covenant. *See Brewster v. Hines,* 155 W.Va. 302, 185 S.E.2d 513 (1971); *McKinley Land Co. v. Maynor,* 76 W.Va. 156, 85 S.E. 79 (1915).

Rather clearly the bringing of this case resulted in the ouster of the appellant from a portion of her land by reformation. The existence of the encumbrance and the subsequent bringing of the action constituted a sufficient disturbance of the appellant's title to permit her to invoke her rights under the general warranty.

The real estate transactions in the present proceeding gave rise both to the Wells' cause of action and to any entitlement that they may have against the Hoods under the Hood's covenant of general warranty. Under the circumstances, this Court believes that the trial court erred in granting summary judgment

against the appellant on her claim for relief against the Hoods.

■ In her third-party complaint the appellant also alleges that K & R Engineering Company had been grossly negligent in surveying the boundary line in dispute and that the trial court erred in granting summary judgment on this point.

It is generally recognized that under certain circumstances a surveyor can be held liable for failure to exercise due skill and care in making a survey. *See Roberts v. Karr,* 178 Cal.App.2d 535, 3 Cal.Rptr. 98 (1960); *Palivoda v. Bruette,* 250 A.2d 808 (Del.1969); *Rosny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656, 35 A.L.R.3d 487 (1969). However, many circumstances affect the potential liability of the surveyor. For instance, the connection between the surveyor and the injured party has been recognized to have some bearing on the case. *Rosny v. Marnul, supra.* Whether the surveyor's error proximately caused the injury is relevant. *Ramirez v. Mookini,* 207 Cal.App.2d 42, 24 Cal.Rptr. 354 (1962). Likewise, whether the surveyor has deviated from the standard of care applied to his profession has some bearing on his liability. *Palivoda v. Bruette, supra.*

In examining the record presently before the Court, this Court believes that the record was not sufficiently developed on the facts relating to K & R Engineering's survey to determine whether it is potentially liable to the appellant and that, at very least, inquiry concerning the facts is desirable to clarify the application of the law. Accordingly, the Court concludes that the granting of summary judgment on the third-party claim against the surveyor was inappropriate and that the relationship between the appellant and the surveyor and the surveyor's survey of the boundary line in dispute should be developed further.

For the reasons stated, the judgment of the Circuit Court of Marion County, insofar as it relates to the appellant's counterclaim against the Hoods and against Kenneth P. Riley and Norman J. Kronjaeger, d.b.a. K & R Engineering Company, is reversed,

and this case is remanded for additional development.

REVERSED AND REMANDED.